UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN FLYER, LLC and
INDIAN TRAILS, INC.,

                Plaintiffs,                       Case Number 15-11512

v.                                          Honorable David M. Lawson

WAYNE COUNTY AIRPORT AUTHORITY,

                Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DISMISSING CERTAIN OTHER MOTIONS AS MOOT

Through the Americans With Disabilities Act (ADA), Congress prohibited any "person" from retaliating against an "individual" who has "opposed any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203(a). The plaintiffs — two private, for-profit transportation companies that operate bus and shuttle services to and from the defendant's airport facilities — allege in their complaint that defendant Wayne County Airport Authority retaliated against them because it was displeased that representatives of Michigan Flyer and Indian Trails supported a lawsuit brought by disabled individuals against the Airport Authority (also brought under the ADA). The defendants filed a motion to dismiss, arguing that (1) their alleged conduct is insufficient as a matter of law to constitute actionable "retaliation" under the ADA; and (2) the plaintiffs are not "individuals" subject to the protections of the Act.

The complaint describes actions taken by the Airport Authority against the plaintiffs that extend well beyond "petty slights or minor annoyances," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), and therefore describes actionable retaliatory conduct. However, the anti-retaliation protection in the ADA applies only to "individuals," a term that has come to refer to

natural persons, not artificial entities such as the plaintiffs. Therefore, these plaintiffs cannot claim the protection against retaliation that the ADA provides, and their complaint must be dismissed.

## I.

In 2014, Michael Harris and Karla Hudson sued the Wayne County Airport Authority for violating the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, when the Airport Authority changed the pick-up and drop-off location for certain bus operators who transported persons with disabilities to the McNamara Terminal at the Detroit Metropolitan Airport. The change consisted of rerouting the buses operated by Michigan Flyer and Indian Trails from a pick-up and drop-off point located just outside the international area of the airport's McNamara Terminal to a location outside and approximately 600 feet away from the indoor waiting area of the McNamara Ground Transportation Center (GTC).

Michigan Flyer and Indian Trails played a role in assisting the plaintiffs in that case, which included preparing affidavits and giving testimony that the plaintiffs relied upon in support of their position that the Airport flouted the ADA's requirements in constructing and operating its GTC.

That case was dismissed after the parties — including Harris, Hudson, the Airport Authority, and the present plaintiffs — entered into a settlement agreement that called for certain changes to be made to the GTC facility. Michigan Flyer and Indian Trails, the plaintiffs here, allege that, immediately after the settlement was executed, the Airport Authority carried out a number of retaliatory gestures toward them, including unilaterally reducing the amount of time that the plaintiffs' buses could stop at the GTC to load and unload passengers; forcing the plaintiffs' drivers to circle the airport instead of stopping in their assigned spaces, even when spaces were available; and forcing the plaintiffs' drivers to vacate assigned spaces before their scheduled departure times,

even when no other vehicles were waiting to use the spaces.  The plaintiffs also assert that the Airport Authority undertook — and pursues to this day — the prosecution of frivolous misdemeanor charges based upon tickets issued to the plaintiffs for "prohibited signage" displayed at a desk used by their employees in the GTC.

The plaintiffs contend that this retaliatory conduct violates section 12203 of the ADA, which states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  The defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiffs have not stated a viable claim.  The motion papers adequately set forth the relevant facts and law, and oral argument will not aid in the disposition of the motion.  Therefore, it is **ORDERED** that the motion be decided on the papers submitted.  *See* E.D. Mich. LR 7.1(f)(2).

## II.

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations."  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997) (quoting

*Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009). "To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court but conclusions may not be unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

The preamble to the ADA states the purpose of the Act as follows: "It is the purpose of this chapter (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; [and] (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C.

-4-

§ 12101(b).  The anti-retaliation provision of the ADA states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).

## A.

To state a retaliation claim under the ADA, the plaintiff must plead facts showing that (1) the plaintiff engaged in activity protected by the ADA; (2) the defendant knew of that activity; (3) the defendant took an adverse action against plaintiff; and (4) the adverse action was caused or motivated by the protected activity.  *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)).  The Airport Authority argues that the conduct that the plaintiffs ascribe to it is so trivial that it cannot amount to adverse action as a matter of law.

In another context (Title VII), the Supreme Court held that the anti-retaliation provisions of anti-discrimination statutes "protect[] an individual not from all retaliation, but from retaliation that produces an injury or harm."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).  Therefore, "those petty slights or minor annoyances that often take place at work and that all employees experience," *ibid.*, do not qualify as adverse action.  Instead, adverse action is conduct that a "reasonable [individual] would have found [to be] . . . materially adverse."  *Ibid.*  That means that the conduct "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Ibid.* (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

The plaintiffs allege that because of their support for Harris's and Hudson's ADA claim, the Airport Authority interfered with the bus companies' operations by reducing their dwell time at their designated bus stops; forcing their buses to circle the airport, even when there was room to stop; forcing their buses to depart before their scheduled departure times; prohibiting the plaintiffs from using the departures level at McNamara Terminal to drop off passengers; allowing competitors to use different and more advantageous pick-up and drop-off locations; and issuing tickets to Michigan Flyer for posting a sign at its desk inside the GTC. Although that conduct might be considered an annoyance by some, it also could constitute a substantial interference with the plaintiffs' business operations, putting them at a competitive disadvantage. It is quite plausible that such conduct, petulant as it may be, would dissuade a reasonable person from supporting a charge that the Airport Authority violated the ADA.

The defendant also argues that the plaintiffs failed to allege adequately that the Airport Authority was aware of the plaintiffs' activity on behalf of Harris and Hudson in the earlier lawsuit, and that the adverse action was caused by the plaintiffs' protected conduct. Those arguments merit only brief mention. The Airport Authority's insistence that these plaintiffs join in the settlement of the prior action undercuts its notice argument. And the alleged timing of the adverse conduct is sufficient to allow an interference of a causal link. *See Murphy v. Lockhart*, 826 F. Supp. 2d 1016, 1031 (E.D. Mich. 2011).

B.

As noted earlier, the ADA anti-retaliation statute protects "individuals." The Airport Authority insists that the term is limited to natural persons and does not include artificial entities. The weight of authority suggests that the defendant is correct.

-6-

The statute reads:

No *person* shall discriminate against any *individual* because such *individual* has opposed any act or practice made unlawful by this chapter or because such *individual* made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C.A. § 12203(a) (emphasis added).  The ADA does not define the words "person" or "individual," although "person" is defined in another statute, the Dictionary Act: "In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  1 U.S.C. § 1.  And as the definition suggests, an "individual" is but one of several types of "persons."

But should "individuals" be limited to natural persons in the parlance of the ADA?  As a general rule, "[w]hen interpreting a statute, [the Court must] begin with the plain meaning of the statutory language."  *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015) (citing *Walker v. Bain*, 257 F.3d 660, 666 (6th Cir. 2001)).  "[I]f [the] language [of the statute] is clear and unambiguous, the Court will usually proceed no further."  *United States v. Bailey*, 228 F.3d 637, 638 (6th Cir. 2000) (citing *Barker v. Chesapeake & Ohio R.R.*, 959 F.2d 1361, 1366 (6th Cir. 1992)).

When construing the Torture Victim Protection Act of 1991, Pub. L. 102-56, 106 Stat. 73 (1992) (codified as note following 28 U.S.C. 1350), the Supreme Court concluded that the term "individual" should be so limited.  *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1708 (2012). Starting first with the term's ordinary meaning, the Court observed that "[a]s a noun, 'individual' ordinarily means '[a] human being, a person.'"  *Id.* at 1706.  That led to the broader pronouncement: "Evidencing that common usage, this Court routinely uses 'individual' to denote a natural person, and in particular to distinguish between a natural person and a corporation."  *Ibid.*  The Court

-7-

acknowledged that Congress could give the term wider scope: "This is not to say that the word 'individual' invariably means 'natural person' when used in a statute. Congress remains free, as always, to give the word a broader or different meaning." *Id.* at 1707. Courts ought not assume that the term means something else, however; "there must be *some* indication Congress intended such a result." *Ibid.* That might be found in an Act's lexicon, "[o]r perhaps . . . the statutory context [could] make[] that intention clear, because any other reading of 'individual' would lead to an 'absurd' result Congress could not plausibly have intended." *Ibid.* (citations, footnotes, and quotation marks omitted).

As noted above, the ADA does not define the term "individual." And the context does not suggest a meaning broader than the "routine" one. The plaintiffs concede that "[t]he term 'individual' is used over 300 times in the ADA," and "[t]hroughout much of the text, the term is clearly used to refer to 'natural humans.'" Plf.'s Resp. [dkt. #12] at 8. That usage is consonant with the avowed purpose of the ADA, which, as stated by Congress, is to address and eliminate "discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). It is self-evident that only a natural person may be "disabled" within the meaning of the Act, and "disability" is not a condition that can apply to an artificial entity such as a corporation. *See* 42 U.S.C. 12102(1)(A) ("The term 'disability' means, with respect to an individual [] a physical or mental impairment that substantially limits one or more major life activities of such individual."). It is logical to conclude therefore that the provisions of the ADA, directed as they are to the protection of natural persons with disabilities, would target for punishment only those whose wrongful acts affect natural persons, which are the only class of plaintiffs that may be subject to the conditions with which Congress was concerned when it passed the Act.

-8-

Moreover, a reasonable reading of the language surrounding the word "individual" in section 12203 cuts sharply against the plaintiffs' proposed expansive construction of that term, because it is contraposed with the word "person" within the same sentence. Congress certainly knew how to use a term that has been interpreted to include artificial entities as well as natural persons; in fact it did so in the very provision at issue in this case where it enacted language that punishes any "person" who violates the Act. If Congress meant to extend both the penalties and the protections of the anti-retaliation provision to congruent categories of parties including both natural persons and artificial entities, then it could have prohibited any "person" from retaliating against "another person." Instead, the legislature used two distinct terms, one of which ("individual"), in the absence of an express statutory definition stating otherwise, generally has been construed to comprise a subset of the other ("person"). *United States v. Horton*, 580 F. App'x 380, 384 (6th Cir. 2014).

The plaintiffs have not cited in their briefing any decision holding — or even suggesting — that the term "individual" as used in section 12203 is, as they would have it, coextensive in meaning with the term "person," and the weight of authority on point is decidedly to the contrary. As noted above, the Supreme Court held otherwise in *Mohamad v. Palestinian Authority*, construing the Torture Victim Protection Act of 1991.

The plaintiffs' attempts to distinguish *Mohamad* are unpersuasive. They argue that the Torture Victim Protection Act is fundamentally different from the ADA because one addresses "torture" and the other addresses "discrimination" and "retaliation" against individuals with "disabilities." There are those differences, but they do not lead to different meanings for the same term. Both statutes protect natural persons from wrongful conduct by others, and both confine their protections to "individuals" only. The plaintiffs further contend that *Mohamad* interpreted the term

-9-

"individual" as it applies to a class of defendants, but in this case the term serves to delineate potential plaintiffs. That semantic variance is insufficient to justify a reading of the statute distinctly at odds with its plain language and the ordinary meaning of the words Congress chose in framing its protections, as well as with the sense in which the legislature used the same word hundreds of other times throughout the Act.

The Court is not aware of any authority construing the word "individual" as used in section 12203 in the sense that the plaintiffs urge. Moreover, in the cases that the Court has found where retaliation or discrimination claims brought by organizational plaintiffs were allowed to proceed, it was because the complaint also had joined as named plaintiffs natural persons with disabilities who alleged that the defendants discriminated against them directly, or because the plaintiff entity was found to have organizational standing to pursue a claim on behalf of such individuals. *E.g.*, *Regional Economic Opportunity Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 46 n.2 (2d Cir. 2002) ("RECAP serves a class of individuals with discrimination claims; the interests at issue are germane to RECAP's purpose; and no individual participation is required under these circumstances."). In this case, Michigan Flyer and Indian Trails are not joined as plaintiffs with any individuals with disabilities, and they have not argued that they are entitled as an organization to pursue collectively the claims of any such group or class of individuals. They have not cited any case in which a private, for-profit corporation, standing alone, has been allowed to proceed as the sole party in interest on a retaliation claim under the ADA, and the Court has found none.

The plaintiffs contend, nevertheless, that the term "individual" must be "broadly read" in order to further the remedial purpose of the ADA to address and eliminate discrimination against individuals with disabilities. But the fact that a statute has a remedial purpose, or that some salutary

-10-

end might be reached by extending its protections to the plaintiffs, cannot justify an overbroad application of the law's provisions that is at odds with any sensible reading of its plain language. *Sandusky Wellness Ctr., LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 224 (6th Cir. 2015) (noting with respect to the Telephone Consumer Protection Act that "'[t]he broad remedial goals of the Act' (assuming there are such goals) 'are insufficient justification for interpreting a specific provision more broadly than its language and the statutory scheme reasonably permit.'") (quoting *Pinter v. Dahl*, 486 U.S. 622, 653 (1988). "[I]nsofar as [] case law requires [broad interpretation of remedial statutes] at all, it doesn't require it when the statute's language is plain." *Ibid.*

In a proposed supplemental brief, the plaintiffs suggest that the Supreme Court's recent decision in *King v. Burwell*, 135 S. Ct. 2480 (2015), supports their position that section 12203 must be "broadly read" in order to further the underlying purpose of the Act.  In *King*, the Supreme Court interpreted the phrase "an exchange established by the State" as it is employed in certain provisions of the Tax Code that were enacted as part of the Affordable Care Act, 26 U.S.C. § 36B.  The reasoning in *King* is inapplicable to this case, and the plaintiffs' argument for applying its holding to the interpretation of the term "individual" as it is used in the ADA is unsound. The Supreme Court began its analysis in *King* by finding that the phrase "an exchange established by the State" was ambiguous, based upon its examination of numerous uses of the phrases "an exchange" and "established by the State" in different portions of the ACA. *King*, 135 S. Ct. at 2491 ("[T]he phrase 'an Exchange established by the State under [42 U.S.C. § 18031]' is properly viewed as ambiguous. The phrase may be limited in its reach to State Exchanges. But it is also possible that the phrase refers to all Exchanges — both State and Federal — at least for purposes of the tax credits."). The holding in *King* is applicable only where the language of a statute is, in the first instance, determined

-11-

to be ambiguous.  The term "individual" as used in the ADA is not facially ambiguous, and the plaintiffs have not pointed to any of the several hundred usages of that term throughout the ADA, which plausibly could be construed to show that Congress used it in any instance in a sense at odds with its ordinary meaning.

The plaintiffs assert that "[t]here are several instances where the [term] 'individual' is clearly used to describe both a 'natural person' and others," but they cite only one such allegedly broadened usage, in section 12205 of the Act.  That section states: "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual."  42 U.S.C. § 12205.  The plaintiffs contend that "[t]his section could be interpreted to mean that only the United States, and private 'natural persons' could be liable for reasonable attorneys' fees, but a private corporation that violates the ADA would not."  Plf.'s Resp. [dkt. #12] at 8.  However, the plaintiffs' reading of this provision disregards its plain language, which clearly states that a court may award an attorney's fee to "the prevailing party . . . ."  There is no ambiguity in that language, which allows any "prevailing party," other than the United States, regardless of type or category, to recover its reasonable attorney's fees and costs from any defendant, without limitation or qualification.  This initial clause of the provision simply says that the United States may not recover attorney's fees when it is a "prevailing party," but any other plaintiff may.  The terminal clause of the section states that when the United States is obligated to pay the attorney fees of any prevailing party (without regard to the nature of that party), then it must do so to the same extent that the Act would require of a private individual.  The legislative decision to cabin the liability of the United

-12-

States for attorney's fees by reference to a congruent liability imposed on a particular category of defendants ("private individuals") does not in any way conflict with the general language of the statute that allows any "prevailing party," other than the United States itself, to recover attorney fees from any defendant, without limitation or specification.

Finally, the plaintiffs contend that the text of certain regulations enacted by the Department of Justice to implement section 12203 furnishes persuasive evidence that the agency charged with the primary responsibility of enforcing the Act has applied an expansive reading of the term "individual" that encompasses artificial entities such as the plaintiffs. The plaintiffs point to a passage in a commentary section of the salient regulation which states that:

> Illustrations of conduct prohibited by this section include, but are not limited to:
> . . .
> (3)     Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or
> (4)     Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

28 C.F.R. § 36.206(c). According to the plaintiffs, the use of the word "person" in these passages, rather than the narrower term "individual," supports their preferred reading of that term as used in section 12203 itself. But that argument is contradicted by the substantive language in the body of the same regulation, which mirrors almost verbatim the wording of the statute:

> No private or public entity shall discriminate against any *individual* because that *individual* has opposed any act or practice made unlawful by this part, or because that *individual* made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

28 C.F.R. § 36.206(a) (emphasis added). Moreover, even if the illustrative provisions of the regulation could be construed as persuasive, agency interpretations of statutory language are immaterial to the process of construction where, as here, the plain language of the statute is clear

-13-

and unambiguous. *Terrell v. United States*, 564 F.3d 442, 450 (6th Cir. 2009) ("When the statute is unambiguous, there has been no delegation to the agency to interpret the statute and therefore the agency's interpretation deserves no consideration at all, much less deference.") (citing *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843-44 (1984)).

There is no "indication [that] Congress intended" the term "individual" as used in section 12203 to denote anything other than its "ordinary" meaning, that is "a natural person" or a "human being." *Mohamad*, 132 S. Ct. at 1706.

III.

Because the plaintiffs are not natural persons, they do not fall within the rubric "individual" as stated in section 12203(a) of the ADA. They do not qualify for protection against retaliatory conduct under that section, and therefore they cannot state a cognizable claim for relief.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. #8] is **GRANTED**. The complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the plaintiffs' motions to strike [dkt. #14], and motion for leave to file supplemental authority [dkt. #17], and the defendant's motion to extend the stay of discovery [dkt. #29], are **DISMISSED** as moot.

s/David M. Lawson                          
DAVID M. LAWSON
United States District Judge

Dated:   October 7, 2015

-14-

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 7, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI