UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN FLYER, LLC and
INDIAN TRAILS, INC.,

       Plaintiffs,                            Case Number 15-11512

v.                                                Honorable David M. Lawson

WAYNE COUNTY AIRPORT AUTHORITY,

       Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
ATTORNEY'S FEES AND DENYING PLAINTIFFS' MOTION TO
AMEND JUDGMENT AND FOR LEAVE TO AMEND COMPLAINT**

The Court dismissed the plaintiffs' retaliation claims brought under Title V of the Americans With Disabilities Act because the plaintiffs are not natural persons, and therefore they cannot claim the protection afforded by that section of the ADA. Defendant Wayne County Airport Authority now seeks attorney's fees as the prevailing party, arguing that the plaintiffs' lawsuit "was frivolous, unreasonable, or groundless." The plaintiffs, on the other hand, believe that they have unearthed a viable new theory of recovery, and they ask the Court to amend the judgment of dismissal and allow them to file an amended complaint. The plaintiffs' initial complaint was neither frivolous, unreasonable, nor groundless, although the Court may not be able to say the same about their proposed amendment. Because neither side has offered convincing arguments in support of their respective motions, both will be denied.

I.

The parties are familiar with the facts of the case, so only a brief summary is necessary here. In 2014, Michael Harris and Karla Hudson sued the Airport Authority for violating the ADA when the Airport Authority changed the pick-up and drop-off location for certain bus operators who

transported persons with disabilities to the McNamara Terminal at the Detroit Metropolitan Airport. The change consisted of rerouting the buses operated by Michigan Flyer and Indian Trails from a pick-up and drop-off point located just outside the international area of the airport's McNamara Terminal to a location outside and approximately 600 feet away from the indoor waiting area of the McNamara Ground Transportation Center (GTC).

Michigan Flyer and Indian Trails played a role in assisting the plaintiffs in that case, which included preparing affidavits and giving testimony that the plaintiffs relied upon in support of their position that the Airport flouted the ADA's requirements in constructing and operating its GTC.

That case was dismissed after the parties — including Harris, Hudson, the Airport Authority, and the present plaintiffs — entered into a settlement agreement that called for certain changes to be made to the GTC facility. After some protracted litigation regarding the scope of the defendant's duties under the settlement agreement, the parties in *Harris* finally reached a compromise on their remaining disputes. Michigan Flyer and Indian Trails, the plaintiffs here, alleged that, immediately after the settlement was executed, the Airport Authority carried out a number of retaliatory gestures toward them, described in the Court's earlier opinion in this case.

The plaintiffs filed their complaint in this case on April 25, 2015, alleging that the defendant's retaliatory conduct following the settlement in *Harris* violated section 12203 of the ADA, which states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The Court granted the defendant's motion to dismiss, holding that as corporate entities, the plaintiffs did not qualify as "individuals" subject to

the protections of section 12203. On October 7, 2015, the Court entered judgment dismissing the case with prejudice. On November 4, 2015, the defendant filed a motion for attorney fees, asserting that, as a "prevailing party" it is entitled to recover them under 42 U.S.C. § 12205. On the same day, the plaintiffs filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59 and for leave to file an amended complaint under Rule 15, arguing that the case should be reopened to allow them to correct the "technical defect" in their pleadings that they contend provoked the dismissal, which, in their view, can be resolved by adding allegations that the defendant's conduct had a harmful effect on Oded Norkin individually, in his capacity as an officer and owner of the plaintiffs. The Court heard oral argument on both motions on February 4, 2016.

II.

The defendant contends that it is entitled to attorney's fees as the prevailing party in this lawsuit under the ADA's fee-shifting provision. The applicable statute reads:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs.

42 U.S.C. § 12205. That statute creates one of several exceptions to the generally applicable "American rule" that usually governs litigation in the United States: "litigants must pay their own attorney's fees." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415 (1978). The Supreme Court "[i]n accord with congressional intent, [has] interpreted these fee-shifting provisions consistently across statutes" that employ the same "prevailing party" language, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), the Fair Housing Amendments Act, 42 U.S.C. § 3613(c)(2), the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, and

the Americans With Disabilities Act, 42 U.S.C. § 12205. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 624 n.1 (2001).

The award of fees to a prevailing defendant is entrusted to the Court's sound discretion, but "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986) (citing *Christiansburg Garment Co.*, 434 U.S. at 422). As the Supreme Court explained in *Christiansburg*:

> To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and *would undercut the efforts of Congress to promote the vigorous enforcement* of the provisions of Title VII. Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

434 U.S. at 422 (footnotes omitted; emphasis added); *see* 42 U.S.C. § 12201 ("It is the purpose of this chapter . . . *to provide clear, strong, consistent, enforceable standards addressing discrimination* against individuals with disabilities.") (emphasis added). In accord with *Christiansburg*, the Sixth Circuit allows an award of attorney fees "to a prevailing defendant in [an ADA] action only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 780 (6th Cir. 2011) (quoting 434 U.S. at 421).

The defendant believes it can surmount this high bar. It cannot. Although the plaintiffs' claims were unsuccessful, they were not frivolous, unreasonable, or without foundation, and there is no evidence that they were brought in bad faith.

To the contrary: the case presented an apparently novel issue of statutory interpretation regarding the scope of the term "individual," as that word was used by Congress in section 12203(a) of the ADA. Neither of the parties at any point in their briefing identified any prior decision of a federal court squarely on point, addressing the use of that word in the ADA's anti-retaliation provision. The Court resolved the question in a lengthy opinion and order, ultimately concluding that the Supreme Court's interpretation of the same word when used in an analogous statutory context was controlling. The Court plowed new ground with its decision, although, admittedly, the soil was not undisturbed. The Supreme Court had reached the same conclusion — that the term "individual" as used by Congress in a statute creating a private right of action, meant a natural person, not a corporation or other entity — when interpreting the Torture Victim Protection Act of 1991. *See Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1708 (2012). And although this Court found that decision compelling, the plaintiffs were able to present colorable — but ultimately unpersuasive — arguments to distinguish that authority. Calling those arguments unpersuasive, however, is a far cry from concluding that they were entirely devoid of reason and foundation. And the Court rebuffed the defendant's other line of attack, finding that the allegations of the complaint described actions that could be construed as retaliatory under the meaning of section 12203, and that a fact finder reasonably could infer a causal link between the plaintiffs' protected conduct and the allegedly retaliatory response based on temporal proximity. That argument likewise was rejected because it was unpersuasive, not because it was frivolous or devoid of reason or foundation.

The defendant has not satisfied the rigorous test that defendants must fulfill under *Christiansburg* and *Baker* to obtain prevailing party attorney's fees. The harsh remedy of awarding the defendant its attorney's fees therefore is neither warranted nor permitted. "An award of

attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct," and the record in this case reveals nothing of that sort. *Jones*, 789 F.2d at 1232. The defendant's motion for attorney fees will be denied.

III.

The plaintiffs argue that they should have a second chance to prosecute this lawsuit because (1) before the Court issued its opinion dismissing the complaint, there was no case law holding that a "non-human" could not pursue an action under the anti-retaliation provisions of the ADA; (2) if given leave to amend its pleadings, the plaintiffs would remedy the "technical defect" that provoked the dismissal of their complaint by alleging that the defendant's retaliation was directed at and affected its employee and officer, Oded Norkin; (3) the plaintiffs also would add a claim under Title II of the ADA, which prohibits discrimination against persons with disabilities, and the implementing regulations for that part of the Act expressly provide a remedy for any "entity" that has been denied equal access to public services because of its association with disabled persons; and (4) the defendant would not be prejudiced by allowing the plaintiffs to amend their pleadings to re-frame its claims in a way that would allow the Court to address them on the merits. The Court disagrees with each of these assertions.

To begin, the liberal amendment standard of Federal Rule of Civil Procedure 15 does not help the plaintiffs. Instead, the plaintiffs "must shoulder a heavier burden" by "meet[ing] the requirements for reopening a case established by Rules 59 or 60." *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014) (quoting *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010)). Otherwise, "plaintiffs could use the court as a sounding board to discover holes in their arguments, then reopen the case by amending their complaint to take account of the

court's decision." *Leisure Caviar*, 616 F.3d at 616 (citations, quotation marks, and alterations omitted). "That would sidestep the narrow grounds for obtaining post-judgment relief under Rules 59 and 60, make the finality of judgments an interim concept and risk turning Rules 59 and 60 into nullities." *Ibid.*

"A court may grant a Rule 59(e) motion to alter or amend [a judgment] if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). The plaintiffs have not satisfied any of those grounds because (1) they have not cited any legal authority in support of their argument that there was an intervening change in controlling law, other than the decision of this Court dismissing their case; (2) they have not shown that any "manifest injustice" would result from the denial of their belated attempt to amend the pleadings, where they could have amended their complaint as a matter of right or sought leave to file an amended complaint at any time during the five months between the filing of their original complaint and the entry of judgment, but they never sought to do so; and (3) the proposed amended complaint that they offer fails to state any plausible claim for relief.

*First*, the plaintiffs contend that relief is justified by an intervening change in controlling law, because "prior to the Court's ruling, no case law existed that held a non-human cannot sustain a cause of action for retaliation." The plaintiffs are correct that neither the parties nor the Court discovered any previous ruling by a federal court addressing the precise question whether the word "individual" as used in section 12203 of the ADA embraces artificial as well as natural persons. However, the question presented was straightforward; it required nothing more than the application

of analogous Supreme Court precedent. The plain meaning of the word "individual," the Court found, was one that repeatedly has been ratified by previous legislative enactments and judicial decisions, including *Mohamad v. Palestinian Authority*, which considered the meaning of the same word, construed against the backdrop of the same questions raised by the parties. *See* 132 S. Ct. at 1708.

The Court's ruling may have been novel in the narrowest sense, but it was not remarkable. From its review of the controlling decisions on point, the Court in fact found its interpretation to be inevitable. The plaintiffs have not cited any post-judgment decision of the Sixth Circuit, the Supreme Court, or any other federal court that would call into question the reasoning or conclusions of the Court's opinion. And the plaintiffs' reliance on the Court's own decision in support of their "intervening change" argument is misplaced. If a decision adverse to the party *in the instant proceeding* were enough to satisfy the intervening change element of the Rule 59(e) analysis, then any party could seek to restart the litigation anew in any case where a court decided any issue of first impression in a ruling adverse to that party. That result surely would "make the finality of judgments an interim concept and risk turning Rules 59 and 60 into nullities." *Leisure Caviar*, 616 F.3d at 616.

*Second*, the plaintiffs assert that they want to correct a mere oversight in their original pleadings, to avoid having their case "dismissed due to a technical defect." They contend that it would be a manifest injustice for the Court to refuse to set aside a judgment that was premised solely on a trivially remediable deficit in the pleadings. In order to correct that defect, the plaintiffs propose to add to their complaint "allegations that Defendant's retaliatory conduct was directed at [Oded] Norkin, in his official capacity as Vice President and Member of Michigan Flyer, LLC, as

a direct result of his personal and professional support of disabled riders at DTW." However, the plaintiffs do not seek to add or substitute Mr. Norkin as a party plaintiff, and they assert in their motion to amend that "[t]his proposed amendment does not alter the nature of the claim and *it does not add parties*." Plfs.' Mot. [dkt. #34] at 13. Nevertheless, the plaintiffs contend that the amended pleading adequately would state a claim for retaliation under section 12203(a) because it would allege that the defendant's conduct was "directed at" Mr. Norkin — an "individual" — and that the retaliation affected Mr. Norkin "in his official capacity as Vice President of Michigan Flyer, LLC."

The plaintiffs' attempt artfully to re-plead their retaliation claim cannot revive it where the Court already expressly has held that the plaintiffs — two private corporations — do not enjoy the protections of the ADA's anti-retaliation statute, because they are not "individuals" protected by the Act. The Court expressly held that "the anti-retaliation protection in the ADA applies only to 'individuals,' a term that has come to refer to natural persons, not artificial entities such as the plaintiffs," and, therefore, "*these plaintiffs* cannot claim the protection against retaliation that the ADA provides, and *their complaint must be dismissed*." Op. & Order [dkt. #31] at 1-2. If it was Oded Norkin who was injured, then it is he who must sue, since, except in limited circumstances that do not apply here, "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). The plaintiffs' proposed reading of the statute would allow any entity at all, no matter how tangentially related to a dispute, to bring a retaliation claim under the ADA, as long as it could allege in passing that some individual in some way was affected by alleged retaliatory conduct after participating in an ADA proceeding. That reading is contrary to the plain language of the statute, which specifically embraces and punishes retaliation "against *any individual* because *such individual* has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). That Norkin may have felt the sting of the Airport Authority's petulance does not translate into an act of retaliation against *him*, nor does it establish that Norkin was the one who engaged in protected conduct.

Moreover, if the plaintiffs wanted to correct this purported "technical defect" in their pleadings, then they could have done so either by amending their complaint by right within 21 days after service of the defendant's motion to dismiss, Fed. R. Civ. P. 15(a)(1)(B), or by filing a motion for leave to amend at any time during the five-month pendency of the case before the Court entered its judgment against them. The plaintiffs cannot seriously maintain that they were surprised by the Court's resolution of the case, where the sole defect that the Court identified in the pleadings was the entire premise of the defendant's motion to dismiss. As the Sixth Circuit has explained, Rule 59 is not to be exploited as an avenue for plaintiffs to "use the court as a sounding board to discover holes in their arguments, then reopen the case by amending their complaint to take account of the court's decision." *Leisure Caviar*, 616 F.3d at 616.

*Third*, the plaintiffs assert that, in addition to the previously pleaded claim for retaliation under Title V of the ADA, they also want to amend their complaint to add a claim for discrimination in the provision of public services under Title II of the Act. The relevant statutory section states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The implementing regulations promulgated under that part further state that "[a] public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual *or entity* because of the known disability of an individual with whom the individual or entity is known to have a relationship

or association." 28 C.F.R. § 35.130(g) (emphasis added). In Count II of their proposed amended complaint, the plaintiffs allege that "[t]he Defendant's conduct, undertaken as a direct result of the Plaintiffs' association with, and support of, people with disabilities, has denied the Plaintiffs equal access to the Defendant's services, programs, and activities, in direct violation of 28 C.F.R. § 35.130(g)." Plfs.' Mot. [dkt. #34], Ex. A, Proposed Am. Compl. ¶ 37 (Pg ID 470).

Those allegations do not state a plausible claim for relief under Title II, because they do not set forth any factual basis to show that the plaintiffs were "exclude[d] [from] or otherwise den[ied] equal services, programs, or activities [] *because of the known disability of an individual* with whom [they were] known to have a relationship or association." 28 C.F.R. § 35.130(g); *see also* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.") (emphasis added). It follows, then, that no manifest injustice could result from the denial of leave to amend a pleading where the revised pleading likewise would be subject to a motion to dismiss on the same basis as the original. *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1124 (6th Cir. 1989) ("[T]he district court may deny a motion to amend a complaint if the court concludes that the pleading as amended could not withstand a motion to dismiss.").

The plaintiffs do not plausibly allege — nor, apparently, could they, in this or any other hypothetical amended pleading — that the defendant undertook its post-settlement campaign of denial and restriction of access to its facilities *because of the known disability* of any identified individual or group of individuals. This is not a case where, for instance, the plaintiffs were denied a zoning permit because they wanted to provide residential or treatment services to disabled

individuals such as recovering drug addicts. *See MX Group, Inc. v. City of Covington*, 293 F.3d 326, 335 (6th Cir. 2002) ("Because Plaintiff [an outpatient drug and alcohol treatment center] has presented evidence that it was denied a zoning permit because it cares for and/or associates with individuals who have disabilities, Plaintiff has standing to bring this suit on its own behalf."). The plaintiffs never alleged in the original *Harris* lawsuit, and they do not allege in the present case, that the defendant banished the plaintiffs to a pick-up and drop-off point at the remote end of the Ground Transportation Center — or that it made any of the other alleged operational changes — *because* any individual plaintiffs, or others like them, were known to have any particular disability. *C.f.*, *MX Group*, 293 F.3d at 334 ("'For example, it would be violative of this paragraph for a local government to refuse to allow a theater company to use a school auditorium on the grounds that the company had recently performed for an audience of individuals with HIV disease.'" (quoting 28 C.F.R., Pt. 35, App. B, cmt. re 28 C.F.R. § 35.130(g))).

The plaintiffs do not allege in their proposed amended complaint that the Airport Authority hassled the plaintiffs' drivers and changed the operating rules for its buses after the settlement agreement was concluded because Michael Harris is paralyzed and uses a wheelchair, or because Karla Hudson is blind, or because of the known disability of any other person or persons whom the plaintiffs serve or associate with. Instead, the plaintiffs simply reiterate the allegations of their previously pleaded retaliation claim: that the defendant retaliated against them *because the plaintiffs participated in the previous lawsuit*. That is a Title V claim (which these plaintiffs cannot bring), no matter what the plaintiffs try to label it. The plaintiffs' proposed Title II claim is a nonstarter. It cannot provide the fuel to restart this lawsuit.

. IV.

The defendant has not shown that it is entitled to attorney's fees under 42 U.S.C. § 12205. The plaintiffs have not shown that they are entitled to a do-over.

Accordingly, it is **ORDERED** that the defendant's motion for attorney's fees [dkt. #33] and the plaintiffs' motion to amend the judgment and file an amended complaint [dkt. #34] are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: February 16, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 16, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI